## A93A0659. STICHER v. THE STATE.
(433 SE2d 660)

JOHNSON, Judge.

Rhuel Sticher appeals from his conviction of child molestation and the denial of his motion for a new trial.

1. Sticher contends that the court erred in admitting, pursuant to OCGA § 24-3-16, hearsay evidence of statements made by the 12-year-old victim about the molestation. The evidence complained of is the testimony of a school counselor, the testimony of a Department of Family & Children Services (DFCS) caseworker and two videotaped interviews of the child. Sticher's complaint that he was denied his right to confront his accuser by such evidence is without merit because the child testified at trial and was thoroughly cross-examined. *Reynolds v. State*, 257 Ga. 725 (363 SE2d 249) (1988); *Eberhardt v. State*, 257 Ga. 420 (1) (359 SE2d 908) (1987); *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562) (1987); *Frazier v. State*, 195 Ga. App. 109, 112 (7) (393 SE2d 262) (1990). Sticher's argument that the hearsay evidence was not reliable is without merit as a review of the trial transcript reveals sufficient indicia of reliability. *Gregg v. State*, 201 Ga. App. 238 (3) (411 SE2d 65) (1991). His claim that the evidence was inadmissible because it bolstered the child's trial testimony also is not persuasive. "[OCGA § 24-3-16] actually contemplates testimony about what the child victim said and did relevant to the alleged sexual contact from both the child and those witnessing the child's later reaction, even if the hearsay may be 'bolstering.' The purpose of this procedure is to allow a defendant to exercise his right of confrontation without requiring him to be cast unfavorably before the jury for forcing the child to testify. Any 'bolstering' can be explored by defendant in cross-examination." *Rayburn v. State*, 194 Ga. App. 676, 677 (3) (391 SE2d 780) (1990). The trial court did not err in admitting the evidence.

2. Sticher claims that the court erred in denying his motion for a new trial because the State improperly withheld a nurse's written report of a physical examination of the victim. The report, however, was not in the State's possession. It is undisputed that both Sticher and the State were first made aware of the report at trial during Sticher's

cross-examination of the DFCS caseworker, who had possession of the report. The caseworker then gave a copy of the report to Sticher, which he used to cross-examine the witness. Sticher admits that prior to trial he was given a copy of the State's entire file. "Appellant made no showing that the information was in the State's file rather than in the possession of [DFCS]. If the material was not in the State's own file, it was not required to investigate the defendant's case for him. [Cit.]" *Frazier v. State*, 195 Ga. App. 109, 112 (6) (393 SE2d 262) (1990). Because the State did not improperly withhold any information, Sticher is not entitled to a new trial on this ground.

3. Sticher argues that the court erred in refusing to admit the nurse's report into evidence. Specifically, Sticher wanted the court to admit a portion of the report on which the nurse apparently gave her opinion that there was questionable digital penetration of the child's vagina. "If the . . . report at issue contains the opinions or conclusions of a third party not before the [court,] those portions of the report are inadmissible hearsay until a proper foundation has been laid, i.e., the person who entered such opinions or conclusions upon the record must qualify as an expert and relate the facts upon which the entry was based." (Citations and punctuation omitted.) *Dept. of Human Resources v. Corbin*, 202 Ga. App. 10 (413 SE2d 484) (1991). Sticher did not lay a proper foundation for the report because the nurse did not testify. The portion of the report he attempted to introduce was therefore inadmissible hearsay. The court did not err in excluding it.

*Judgment affirmed. Blackburn and Smith, JJ., concur specially.*

BLACKBURN, Judge, concurring specially.

I reluctantly concur with the majority opinion. Current law offers no remedy for the problem encountered by the defendant in this case, with regard to the surprise disclosure of a medical report in the possession of the DFCS caseworker who testified on behalf of the state.

Prior to the trial, the defendant's attorney filed no *Brady* motion, because the district attorney had a policy of always providing criminal defendants with the entire police file without such a request. On appeal, the defendant's attorney emphasizes that he makes no accusation that the district attorney or the police withheld the medical report in question. Indeed, the district attorney was just as surprised by the revelation during the trial as was the defendant's attorney. However, there is only one state, and the fact remains that a branch of the state had in its possession information which could have been favorable to the defense and which undoubtedly would have been discovered if it had been in the district attorney's possession, or if the defendant had any meaningful discovery rights from government entities other than the prosecuting official.

Where a *Brady* motion is filed by a criminal defendant, the state is obligated to provide the defendant with all information in its possession that is favorable to the defense. *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). That obligation imposed upon the state should be no less in this case despite the defendant's not having filed a *Brady* motion, because the district attorney maintained a policy that obviated the need for making such a request. Indeed, why should the state not automatically be required to provide such information and evidence without the necessity of any request of an antiquated process requiring for such information by the defendant to the prosecutor?

In rejecting the defendant's contention that the state failed to supply exculpatory material in violation of its obligation to do so, the majority opinion relies upon *Frazier v. State*, 195 Ga. App. 109, 112 (6) (393 SE2d 262) (1990), in which this court found that the appellant "made no showing that the information was in the State's file rather than in the possession of [DFCS]. If the material was not in the State's own file, it was not required to investigate the defendant's case for him. [Cit.]" I would suggest, however, that there is only one state and it should be expected to investigate its own agencies, reasonably involved in the particular case and not deny a defendant access to material in the state's possession which might exculpate the defendant, and rely on a compartmentalized concept of the state in doing so. In lieu of this burden, reasonable pre-trial discovery should be made available to the defendant to facilitate a fair trial, and not one by ambush. Notice is the cornerstone of due process, and mid-trial discovery of the existence of exculpatory material is inadequate. The best way to instill confidence in the judicial system, and to minimize appeals, is to ensure that a defendant receives a fair trial to begin with. It is sad indeed that a defendant would be entitled to pre-trial discovery of the subject material if he were being sued for money damages, but has no such right where only his life or liberty may be at stake.

The unsuccessful attempt by the defendant's attorney to have the surprise medical report admitted into evidence demonstrates the Catch-22 presented by this case. On the one hand, the defendant could not adduce the testimony of the nurse who examined the child and concluded that "questionable" digital penetration had occurred, because he was unaware of the nurse's existence due to the DFCS caseworker's possession of that evidence, rather than the district attorney's possession of same. On the other hand, the medical report could not be admitted into evidence, because the nurse was not before the court, thus rendering the pertinent portions of the report inadmissible hearsay. *Dept. of Human Resources v. Corbin*, 202 Ga. App. 10 (413 SE2d 484) (1991). In *Frazier*, after the disclosure of the infor-

mation in the DFCS file, the defendant's attorney was allowed to review the file and interview the DFCS witnesses. Under those circumstances, this court observed that the earlier failure to disclose the information had not hampered the defense. The same certainly cannot be said in the instant case.

The current law dismembers the state, and obligates only the district attorney to provide a criminal defendant with any exculpatory evidence, while denying the defendant any meaningful pre-trial discovery from other state agencies. The defendant is not entitled to discover documents from DFCS while the district attorney is not required to inquire of DFCS concerning documents in their hands which justice requires be given to defendant. I am constrained to concur with the majority opinion that the defendant is not entitled to a new trial because of DFCS's possession of the information and that the trial court did not err in excluding the medical report in question, under the current state of the law.

SMITH, Judge, concurring specially.

Although I fully concur in the reasoning and the result reached in the majority opinion, the DFCS caseworker's unexpected disclosure at trial of the nurse's written report is troubling. There is a need for remedial legislation in this area, because the present state of the law does offer some opportunity for mischief and abuse by prosecutors and prosecution witnesses.

In this case, however, the difficulties are far more apparent than real. The record here reveals that the defense attorney was allowed, without objection, to question the DFCS caseworker about the substance of the disputed report: "Q. Okay. And did the nurse — One, we have a report here that you furnished us today that you got from the nurse; is that right? A. Right. Q. Okay. You also received a verbal report from the nurse? A. I spoke with her over the phone. Q. Okay. And did she indicate to you that there was any indication of trauma or tearing? A. No. She — She explained that [the victim] had been using tampax for a number of months and that there was no indications of trauma or tearing. [DEFENSE ATTORNEY]: That's all."

Moreover, the record shows absolutely no effort by the defense to secure the attendance of the nurse at trial as a witness nor any request for additional time to do so. There clearly was an opportunity at least to make the attempt to obtain her presence, since there was an overnight recess after the existence of the report was disclosed. There was no request on either day for a longer or additional recess to deal with this issue, for assistance of the sheriff in serving a subpoena, or other relief. Instead, the defense attorney simply attempted, unsuccessfully, to introduce the report into evidence. This likely was a tactical decision by defense counsel, given that he already had testi-

mony from the DFCS caseworker on portions of the report favorable to the defense and may have been concerned that the nurse's testimony, as a whole, might be unfavorable.

The need for change in the law in this area remains, but there is little basis for practical concern in the context of this case.

DECIDED JUNE 25, 1993 —
RECONSIDERATION DENIED JULY 13, 1993 — 

*Word & Flinn, Gerald P. Word*, for appellant.
*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.